PHYSICIANS' DEFENSE CO. v. COOPER, State Ins. Com'r.

(Circuit Court, N. D. California. June 6, 1911.)

INSURANCE (§ 2*)—CONTRACTS OF "INSURANCE"—REGULATION.

An association organized to protect physicians against civil prosecutions for malpractice, which issues contracts to physicians for a specified consideration and agrees to defend at its own cost, not in excess of a specified sum, actions against physicians for malpractice, without assuming the payment of any judgment in any suit defended, is engaged in the business of insurance within Civ. Code Cal. §§ 2527, 2531, defining "insurance" as a contract whereby one undertakes to indemnify another against loss or liability arising from an unknown or contingent event, and providing that any contingent or unknown event which may damnify a person or create a liability against him may be insured against, since the contract is one of indemnity and not one to render personal services

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for another, and such company is subject to the provisions of the statutes of the state regulating the business of insurance therein.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1½; Dec. Dig. § 2.*

For other definitions, see Words and Phrases, vol. 4, pp. 3674–3677.]

In Equity. Suit by the Physicians' Defense Company against E. C. Cooper, as State Insurance Commissioner of California. Application for injunction denied, demurrer to bill sustained, and bill dismissed.

Stanley Moore and Goodfellow, Eells & Orrick, for complainant.

U. S. Webb, Atty. Gen., and E. B. Power, Asst. Atty. Gen., for defendant.

VAN FLEET, District Judge. The bill seeks to restrain the defendant, as state insurance commissioner, from threatened interference by that officer with complainant's business by proceedings to require it to conform to the provisions of the statutes of the state regulating the business of insurance therein. The order to show cause is met by a demurrer which challenges the bill as devoid of equity; and the sole question presented is whether the business in which complainant is engaged is that of insurance, and so subject to the supervision of the insurance commissioner. This question depends upon the nature of the contracts the complainant issues to its patrons; that is, whether they are contracts of insurance.

As disclosed by the bill, the purposes for which the complainant is organized, as stated in its articles of incorporation, are "to aid and protect the medical profession in the practice of medicine and surgery by the defense of physicians and surgeons against civil prosecution for malpractice"; and its plan of business as therein set forth is as follows:

"The association will issue to physicians and surgeons, upon stated and agreed compensation, contracts by which it will undertake and agree to defend the holder of the contract, at its own expense, against any action brought against him for damages for alleged malpractice in relation to or in connection with services performed, or which should have been performed, within the time covered by the contract; but the association shall not in any defense contract issued by it assume or agree to assume or pay any judgment for damages for malpractice rendered against the holder of such contract."

Under the contract issued by it, complainant undertakes, for an agreed and stipulated annual payment in the nature of a premium, to defend the holder "against all suits for damages for civil malpractice based upon professional services rendered by himself or his agent during the term of this contract, at its own expense, not exceeding five thousand dollars in defense of any one suit, and not exceeding in the aggregate ten thousand dollars in defense of suits based on services rendered by the holder hereof or his agent within one year from the date of this contract."

And the contract provides:

"Upon receipt of notice from the holder hereof that a suit has been commenced against him for damages for civil malpractice, the company will employ a local attorney, in whose selection the holder hereof shall have a voice,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

188 F.—53

who, together with the company's attorney, will defend the case without expense to the holder hereof.

"Such defense will be maintained until final judgment shall have been obtained in favor of the holder hereof, or until all remedies by appeal, writ of error, or other legal proceedings, shall have been exhausted, or until the above-mentioned sums shall have been expended in said defense; providing that this contract does not cover suits based upon criminal acts or suits involving the collection of fees for services.

"Said company does not obligate itself to pay or to assume or to secure the payment of any judgment rendered against the holder hereof in any suit defended by it.

"The company shall not compromise any suit or claim for malpractice against the holder hereof."

The foregoing are the material and substantive features of the contract issued by complainant to its patrons; and the contention of the complainant is that, as indicated by its terms, it is purely a contract for personal 'services and embraces none of the essential features of a contract of insurance. The correctness of this claim must be determined by ascertaining the real nature and purpose of the contract when construed in the light of the provisions of the statute of the state declaring what shall be deemed a contract of insurance as therein defined, ignoring, if necessary, considerations arising from the mere outward semblance or form in which the contract is cast.

Section 2527 of the Civil Code provides:

"Insurance is a contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event."

And section 2531 of the same Code provides:

"Any contingent or unknown event, whether past or future, which may damnify a person having an insurable interest, or create a liability against him, may be insured against, subject to the provisions of this chapter."

Section 2532 excepts from the category of insurable contingencies drawings in a lottery or for or against any chance or ticket in such lottery drawing a prize.

It will at once be seen that these provisions are sufficiently broad in their scope to include every contract the effect and purpose of which is to indemnify the holder against any contingent liability as being in its nature insurance; and to include as the proper subject of such contracts any conceivable event of an uncertain or unknown nature the effect of which may give rise to liability or loss, saving only contingencies dependent upon events deemed contrary to public morals.

Wherein the contract involved is lacking in the elements of a contract of insurance as thus defined is not readily to be perceived. Very clearly to my mind it is a contract providing indemnity against a contingent liability. The liability of the holder to be sued is certainly a contingent thing; and the undertaking, in the event of suit, to hold him harmless, limited though it be, is quite as certainly an indemnity.

Complainant argues that the element of indemnity is wholly eliminated by the provision which exempts it from obligation to pay the judgment; and that all it contracts to do is to secure competent counsel and, at its own expense, see that the suit is properly defended. The contract is more or less artfully drawn to put forward this idea,

but not sufficiently so to conceal the fact that such is not its underlying purpose and effect. If the amount of the final judgment was the extent of the liability incurred in the event provided against, the contention might be more plausible; but there are other elements of damnification which such suits entail. Indeed, not infrequently the amount of the judgment recovered is the small end of the loss incurred and suffered by a defendant in the class of litigation covered. In many instances the costs and expenses of such suits—expenses of a nature for which no recoupment may be had—far exceed the amount awarded by the judgment; and these the complainant obligates itself, up to the limit of $5,000, to pay. This is clearly indemnity; and obviously it is not essential to make it a contract of insurance that it shall indemnify against all loss. But complainant argues that such extra legal costs and expenses, if any are incurred, are not the liability or loss of the contract holder, for he does not incur them; that the liability incurred in this regard, if any, is that of complainant and not the physician. This is begging the question. The obligation rests upon the complainant, it is true, but only by reason of its contract by which it has assumed it; the primary liability to such costs and expenses is incurred by and rests upon the defendant physician, and but for his contract he would be called upon to pay them. It is this very feature that constitutes the contract one of indemnity. But it is contended by complainant that the essential feature of all insurance is a money reimbursement for damage or loss sustained or liability incurred by the insured; and that a contract whereby one undertakes merely to perform certain services for another, and to pay any expenses incurred in such service out of his own pocket, is not reimbursement in money, and so not insurance. This is only another way of putting complainant's claim that this is but a contract for personal services; and, of course, if that were the real nature of the contract, the discussion would be at an end. But, as suggested, the real nature of the contract is to be determined not so much by regarding its form as its effect; and for this purpose its terms may be transposed and its stipulations so stated as to show what is really accomplished. If, as aptly suggested by the Assistant Attorney General, the contract was one which by its terms provided that the holder in the event of a suit against him should himself proceed to defend it and pay the costs and expenses in the first instance out of his own pocket, and that the complainant should thereupon be obligated to reimburse him for such outlay up to the amount of $5,000, excepting only its liability to pay any part of a final judgment, would any one say that such a contract was not one of insurance? And yet that is precisely the result accomplished under a slightly different guise and by going the other way about.

It is said that, if this is a contract of insurance, then the contract by which an attorney for a stipulated retainer or fee undertakes at his own expense to defend a client in certain litigation or against a certain class of suits, or a contract by which a board of trade undertakes in consideration of an annual payment by its members to prosecute and defend at its own expense all litigation growing out of the

business in which such members are engaged, are equally contracts of insurance. But we are not here concerned with the nature of such contracts. If attorneys and boards of trade are engaged in the business of making such contracts, it may be of interest to the insurance commissioner; but all we are here concerned with is whether the contract under consideration is an insurance contract, and so renders the complainant, which is engaged in the business of putting forth such contracts, amenable to regulation under the insurance laws of the state. That the contract is one of insurance, I entertain no doubt.

Complainant relies, in support of the contention advanced by it, upon Vredenburgh v. Physicians' Defense Co., 126 Ill. App. 509, and State ex rel. Physicians' Defense Co. v. Laylin, 73 Ohio St. 90, 76 N. E. 567, both involving a construction of the same contract, and wherein conclusions were reached in harmony with complainant's claim that the contract is merely one for personal services. I am unable to acquiesce in the views expressed in those cases. The reasoning proceeds from a consideration of the formal terms of the contract in suit as affected by certain general definitions of the essentials of a contract of insurance as stated in the text books; and both cases ignore the consideration that the liability to loss, incurred in the contingency as to which the contract relates, involves a liability beyond the naked amount of the judgment that may be recovered.

On the other hand, the views herein expressed will be found fully sustained in the later case of Physicians' Defense Co. v. O'Brien, Insurance Com'r, 100 Minn. 490, 111 N. W. 396, where the Supreme Court of Minnesota, interpreting the same contract in the light of a statutory definition very similar to and no broader than our own, hold it to be clearly a contract of insurance.

The application for an injunction must be denied, the demurrer sustained, and the bill dismissed; and it is so ordered.